UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| GABRIELLA NIGRO, Individually and for Others Similarly Situated<br><br>v.<br><br>LOUISIANA CHILDREN'S MEDICAL CENTER d/b/a LCMC HEALTH | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.  Gabriella Nigro ("Nigro") brings this collective action to recover unpaid wages and other damages from Louisiana Children's Medical Center d/b/a LCMC Health ("LCMC Health").

2.  Nigro works for LCMC Health as an EMT at LCMC Health's East Jefferson General facility in Metairie, Louisiana.

3.  Like the Putative Class Members (as defined below), Nigro regularly works more than 40 hours in a week.

4.  But LCMC Health does not pay them for all their hours worked.

5.  Instead, LCMC Health automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

6.  Nigro and the Putative Class Members are thus not paid for that time.

7.  But Nigro and the Putative Class Members do not actually receive *bona fide* meal breaks.

8.  Instead, LCMC Health requires Nigro and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and LCMC Health continuously subjected them to work interruptions during their unpaid "meal breaks."

9.  LCMC Health's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") by depriving Nigro and the Putative Class Members of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over LCMC Health because LCMC Health is a domestic corporation.

12. Venue is proper because LCMC Health maintains its corporate headquarters in New Orleans, Louisiana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Nigro has worked for LCMC Health as an EMT at LCMC Health's East Jefferson General facility in Metairie, Louisiana since approximately November 2022.

14. Throughout her employment, LCMC Health classified Nigro as non-exempt and paid her on an hourly basis.

15. Throughout her employment, LCMC Health subjected Nigro to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

16. But throughout her employment, Nigro did not actually receive *bona fide* meal breaks.

17. Nigro brings this action on behalf of herself and other similarly situated hourly, non-exempt LCMC Health patient care employees who were subject to LCMC Health's automatic meal break deduction policy.

18. LCMC Health automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

19. But these employees do not actually receive *bona fide* meal breaks.

20. Thus, LCMC Health uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

21. The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt LCMC Health employees who received a meal period deduction at any time during the past 3 years ("Putative Class Members").**

22. LCMC Health is a Louisiana non-profit corporation that maintains its principal office in New Orleans, Louisiana.

23. LCMC Health may be served through its registered agent: **Jody Martin, 1100 Poydras Street, Suite 2500, New Orleans, Louisiana 70163**, or wherever she may be found.

### COVERAGE UNDER THE FLSA

24. At all relevant times, LCMC Health was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, LCMC Health was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, LCMC Health was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because LCMC Health, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

27. At all relevant times, LCMC Health has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Nigro and the Putative Class Members were LCMC Health's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

29. At all relevant times, Nigro and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

30. LCMC Health uniformly deducted 30 minutes a day from Nigro's and the Putative Class Members' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

31. As a result, LCMC Health failed to pay Nigro and the Putative Class Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

32. LCMC Health's meal break deduction policy, therefore, violates the FLSA by depriving Nigro and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

33. LCMC Health own and operates nine hospitals and a network of urgent care facilities across Louisiana.[1]

34. To meet its business objectives, LCMC Health hires patient care workers, including Nigro and the Putative Class Members, to work in its various healthcare facilities.

35. LCMC Health uniformly classifies these patient care employees (including Nigro and the Putative Class Members) as non-exempt and pays them on an hourly basis.

36. While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

37. For example, Nigro has worked for LCMC Health as an EMT at LCMC Health's East Jefferson General facility in Metairie, Louisiana since approximately November 2022.

38. As an EMT, Nigro's primary responsibilities included providing direct patient care to the patients at LCMC's East Jefferson General Hospital, such as performing first aid, checking vitals, support care, safely transporting patients, charting treatments, and generally assisting doctors and other nursing staff with treatment.

---

[1] *See* https://www.lcmchealth.org/about-us/ (last visited September 28, 2023).

39. Throughout her employment, LCMC Health classified Nigro as non-exempt and paid her on an hourly basis.

40. Throughout her employment, LCMC Health subjected Nigro to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

41. But throughout her employment, Nigro did not actually receive *bona fide* meal breaks.

42. Nigro and the Putative Class Members perform their jobs under LCMC Health's supervision and use materials, equipment, and technology LCMC Health approves and supplies.

43. LCMC Health requires Nigro and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

44. At the end of each pay period, Nigro and the Putative Class Members receive wages from LCMC Health that are determined by common systems and methods that LCMC Health selects and controls.

45. LCMC Health requires Nigro and the Putative Class Members to record their hours worked using LCMC Health's timeclock system.

46. Further, LCMC Health subjects Nigro and the Putative Class Members to a common policy and practice of automatically deducting time from their recorded hours worked for meal periods.

47. Specifically, LCMC Health automatically deducts 30 minutes a day from Nigro's and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

48. LCMC Health automatically deducts this time regardless of whether Nigro and the Putative Class Members actually receive full, uninterrupted, 30-minute meal breaks.

49. LCMC Health simply assumes Nigro and the Putative Class Members receive *bona fide* meal breaks each shift they work.

50. But Nigro and the Putative Class Members do not actually receive *bona fide* meal breaks.

51. Instead, LCMC Health requires Nigro and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

52. And LCMC Health continuously subjects Nigro and the Putative Class Members to work interruptions during their unpaid meal periods.

53. In fact, even when Nigro and the Putative Class Members attempt to take a meal break, LCMC Health requires them to carry radios and/or walkie talkies so LCMC Health can contact them and instruct them to immediately return to work at any time (including during their unpaid "meal breaks").

54. Because of these constant work interruptions, Nigro and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

55. Rather, during their unpaid "meal breaks," Nigro and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

56. Thus, Nigro and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for LCMC Health's—not these employees'—predominant benefit.

57. This unpaid time is compensable under the FLSA because LCMC Health knew, or should have known, that (1) Nigro and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on LCMC Health's premises or under LCMC Health's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for LCMC Health's predominant benefit.

6

58. LCMC Health fails to exercise its duty as Nigro's and the Putative Class Members' employer to ensure these employees are not performing work that LCMC Health does not want performed during their unpaid "meal breaks."

59. And LCMC Health knows Nigro and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because LCMC Health expects and requires these employees to do so.

60. In fact, Nigro and the Putative Class Members repeatedly complained to LCMC Health's management and their supervisors about being forced to work during their unpaid "meal breaks."

61. Thus, LCMC Health requested, suffered, permitted, or allowed Nigro and the Putative Class Members to work during their unpaid "meal breaks."

62. Despite accepting the benefits, LCMC Health does not pay Nigro and the Putative Class Members for the compensable work they perform during their automatically deducted "meal breaks."

63. Thus, under LCMC Health's uniform automatic meal break deduction policy, Nigro and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA.

64. In addition to excluding time from these employees' wages for "meal breaks," LCMC Health also uniformly subjects Nigro and the Putative Class Members to its automatic rounding policy.

65. Specifically, LCMC Health automatically rounds Nigro's and the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments for LCMC Health's—not these employees'—primary benefit.

66. In fact, in conjunction with LCMC Health's automatic rounding policy, LCMC Health also prohibits Nigro and the Putative Class Members from clocking in and out for their shifts within more than 7 minutes of their scheduled shift start and end times.

7

67. By enforcing these policies together, LCMC Health ensures its automatic rounding policy *always* benefits LCMC Health—and *never* benefits Nigro and the Putative Class Members.

68. Thus, under LCMC Health's uniform automatic rounding policy, Nigro and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the FLSA.

69. Nigro worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

70. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

71. Indeed, Nigro and the Putative Class Members typically worked 12-hour shifts for at least 5 days a week.

72. And Nigro and the Putative Class Members regularly were also required to work "off the clock" during their unpaid meal breaks to complete their patient care job duties and responsibilities for LCMC Health's predominate benefit.

73. As a result, Nigro and the Putative Class Members routinely work more than 40 hours in a typical workweek.

74. When Nigro and the Putative Class Members work more than 40 hours in a workweek, LCMC Health does not pay them overtime wages for all overtime hours worked because LCMC Health fails to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek in violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

75. Nigro incorporates all other paragraphs by reference.

76. Nigro brings her claims as a collective action on behalf of herself and the Putative Class Members.

77. The Putative Class Members were victimized by LCMC Health's automatic meal break deduction policy, which is in willful violation of the FLSA.

78. Other Putative Class Members worked with Nigro and indicated they were paid in the same manner, performed similar work, and were subject to LCMC Health's same automatic meal break deduction policy.

79. Based on her experience with LCMC Health, Nigro is aware LCMC Health's illegal practices were imposed on the Putative Class Members.

80. The Putative Class Members are similarly situated in all relevant respects.

81. Even if their precise job duties might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

82. Therefore, the specific job titles of the various Putative Class Members do not prevent collective treatment.

83. Rather, the putative collective is held together by LCMC Health's uniform automatic meal break deduction policy, which systematically deprived Nigro and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek.

84. LCMC Health's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

85. LCMC Health's records reflect the number of hours the Putative Class Members recorded they worked each week.

86. LCMC Health's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

87. Likewise, LCMC Health's records show the specific times the Putative Class Members punched in and out for their shifts.

88. And LCMC Health's records show that it automatically rounded the Putative Class Members' recorded time punches to the nearest quarter hour.

89. The back wages owed to Nigro and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

90. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to LCMC Health's records, and there is no detraction from the common nucleus of liability facts.

91. Therefore, the issue of damages does not preclude collective treatment.

92. Nigro's experiences are therefore typical of the experiences of the Putative Class Members.

93. Nigro has no interest contrary to, or in conflict with, the Putative Class Members.

94. Like each Putative Class Member, Nigro has an interest in obtaining the unpaid wages owed to them under federal law.

95. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96. Absent this collective action, many Putative Class Members likely will not obtain redress for their injuries, and LCMC Health will reap the unjust benefits of violating the FLSA.

97. Further, even if some of the Putative Class Members could afford individual litigation against LCMC Health, it would be unduly burdensome to the judicial system.

98. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

99. The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

   a. Whether LCMC Health engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

   b. Whether LCMC Health's automatic meal break deduction policy deprived Nigro and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

   c. Whether LCMC Health knew, or had reason to know, Nigro and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid meal breaks in violation of the FLSA;

   d. Whether LCMC Health failed to pay Nigro and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks, in violation of the FLSA;

   e. Whether LCMC Health's decision not to pay Nigro and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

   f. Whether LCMC Health's FLSA violations were willful.

101. Nigro knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

102. As part of its regular business practices, LCMC Health intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Nigro and the Putative Class Members.

103. LCMC Health's illegal meal break deduction policy deprived Nigro and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

104. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

105. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

106. Those similarly situated employees are known to LCMC Health, are readily identifiable, and can be located through LCMC Health's business and personnel records.

### LCMC HEALTH'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

107. Nigro incorporates all other paragraphs by reference.

108. LCMC Health knew it was subject to the FLSA's overtime provisions.

109. LCMC Health knew the FLSA required it to pay employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

110. LCMC Health knew the Putative Class Members were non-exempt employees entitled to overtime pay.

111. LCMC Healthy knew the Puative class Members were paid on an hourly basis.

112. LCMC Health knew each Putative Class Members worked over 40 hours in at least one workweek during the three years before this Complaint was filed because LCMC Health required these employees to record their hours worked using its timeclock system.

113. LCMC Health knew the FLSA required it to pay employees, including the Putative Class Members, for all hours they performed compensable work.

114. LCMC Health knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that LCMC Health did not want performed.

115. LCMC Health knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

116. LCMC Health knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

117. LCMC Health knew the Putative Class Members regularly worked during their unpaid meal breaks.

118. LCMC Health knew it requested, suffered, permitted, or allowed the Putative Class Members to work during their unpaid meal breaks.

119. LCMC Health knew the Puative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for LCMC Health's predominant benefit.

120. Indeed, the Putative Class Members complained to LCMC Health's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

121. Thus, LCMC Health knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

122. Nonetheless, LCMC Health automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

123. In other words, LCMC Health knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours they performed compensable work.

124. LCMC Health's decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to

automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

125. LCMC Health's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

126. LCMC Health knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Nigro and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

127. LCMC Health knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA.

128. Indeed, LCMC Health has been sued previously by employees for failing to pay overtime wages in violation of the FLSA, including for LCMC Health's same auto-deduction meal break policy. *See, e.g.*, *Tillman v. Louisiana Children's Medical Center*, No. 2:16-CV-14291 (E.D. La.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

129. Nigro incorporates all other paragraphs by reference.

130. Nigro brings her FLSA claim on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

131. LCMC Health violated, and is violating, the FLSA by employing non-exempt employees (Nigro and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

132. LCMC Health's unlawful conduct harmed Nigro and the Putative Class Members by depriving them of the premium overtime wages they are owed.

133. Accordingly, Nigro and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

134. Nigro demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Nigro, individually and on behalf of the Putative Class Members, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. An Order pursuant to Section 16(b) of the FLSA finding LCMC Health liable for unpaid overtime wages due to Nigro and the Putative Class Members, plus liquidated damages in amount equal to their unpaid overtime wages;

    c. Judgment awarding Nigro and the Putative Class Members all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

       An Order awarding attorney's fees, costs, and expenses;

    d. Pre- and post-judgment interest at the highest applicable rates; and

e. Such other and further relief as may be necessary and appropriate.

Dated: September 28, 2023.

Respectfully submitted,

**BOHRER BRADY, LLC**

By: */s/ Philip Bohrer*
Philip Bohrer (#14089)
Scott E. Brady (#24976)
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone:	225-925-5297
Facsimile:	225-231-7000
phil@bohrerbrady.com
scott@bohrerbrady.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:	713-352-1100
Facsimile:	713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone:	713-877-8788
Facsimile:	713-877-8065
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone:	361-452-1279
Facsimile:	361-452-1284
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS NIGRO & THE PUTATIVE CLASS MEMBERS**

16